NICOLA T. HANNA
United States Attorney
DOROTHY A. SCHOUTEN
Assistant United States Attorney
Chief, Civil Division
INDIRA J. CAMERON-BANKS
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-8341
    Facsimile: (213) 894-7819
    E-mail: indira.j.cameron-banks@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

JS-6

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>PREFERRED LONG DISTANCE, INC.,<br><br>    Defendant. | Case No. 2:17-cv-00167-RGK-KS<br><br>[~~PROPOSED~~]<br>**CONSENT JUDGMENT** |

    The Court, having reviewed the Stipulation for Entry of Consent Judgment, and good cause appearing therefore, IT IS HEREBY ADJUDICATED AND DECREED THAT

  1. This Consent Judgment is entered into between the United States of America and Defendant Preferred Long Distance, Inc. and its current and former subsidiaries and affiliates (collectively, "PLD"). The United States and Preferred are collectively referred to herein as "the Parties."

1

**RECITALS**

2. The Federal Communications Commission ("FCC") is an independent federal regulatory agency created by Congress that regulates providers of telecommunications services pursuant to the Communications Act of 1934, as amended ("the Act"), 47 U.S.C. § 151 *et seq.*, and imposes penalties for failure to comply with it. 47 U.S.C. § 503(b). These penalties are recoverable in a civil action by the United States. 47 U.S.C. § 504(a). In January 2017, the United States Attorney's Office for the Central District of California ("USAO-CDCA") initiated such an action against PLD, Inc. in *United States of America v. Preferred Long Distance, Inc.,* CV-17-00167-RGK-KS to recover penalties related to violations of the Act stemming from complaints by consumers in 2012 including but not limited to changes in their telecommunications services from their preferred provider to PLD.

3. PLD represents that it has redressed the 2012 consumer complaints, as well as all known consumer complaints made to the FCC from February 22, 2017 to present, through credits and/or refunds made to the consumers to the consumers satisfaction, and/or ceasing any collection activity in connection with such complaints.

4. Since the time of the 2012 complaints by consumers, PLD represents that it has expanded its business relationship with various telecommunications and information service providers which allow PLD to co-brand said providers logos with PLD's on PLD's website and marketing materials. One such business relationship is between PLD and AT&T whereby PLD is a Platinum Service Provider member of the AT&T Partner Exchange Program. Additionally, PLD is an authorized AT&T, CenturyLink, Frontier and Verizon Wholesale reseller contracted to provide various telecommunications services. By way of example of its business relationship with the AT&T Partner Exchange Program, PLD is authorized to (a) offer many services and products branded and/or packaged with the AT&T or AT&T Partner Exchange logo, including but not limited to Wireless Home Phone, cell phones, tablets and mifi hotspots among others, (b) send AT&T technicians to customer premises to install AT&T fiber or high speed

internet including installing AT&T branded modems or other equipment when needed for fiber or high speed internet, or sending AT&T technicians to troubleshoot service issues at the customer premise, (c) offer in the near future a voice and internet bundle previously known as "AT&T Uverse Voice" under PLD's brand name(s) and the AT&T Partner Exchange brand name together to replace traditional plain old telephone service ("POTS"); and (d) offer in the future new technology not yet released by AT&T.. PLD represents that it is contracted with AT&T Partner Exchange to disseminate co-branded marketing materials displaying both the AT&T Partner Exchange and the PLD logos to be sent to current and prospective customers. The AT&T Partner Exchange has authorized PLD to explain its affiliation to consumers by identifying itself as (a) a Platinum Service Provider member of AT&T's Partner Exchange Program, (b) providing products and services "powered" by AT&T and delivered by PLD, (c) and the AT&T Partner Exchange Program authorized PLD to sell and distribute such products and services in a co-branded manner because the AT&T Partner Exchange recognizes PLD's ability to provide quality customer service and competitive pricing.

5. This Court has subject matter jurisdiction over this civil action, and personal jurisdiction over PLD, which waives any and all objections to the Court's jurisdiction.

6. The Parties hereby stipulate to resolve all claims set forth in this action pursuant to a Consent Judgment with the Terms and Conditions set forth herein.

## TERMS AND CONDITIONS

7. <u>Compliance:</u> PLD shall adhere to the terms and conditions set forth herein for a period of two years, up to and including March 28, 2020, pursuant to a "Compliance Plan" that must (a) be established on or before April 28, 2018, and (b) include training for all PLD personnel required to implement the terms and conditions set forth herein.

    a. On or before March 28, 2018, PLD shall designate a "Compliance Officer" responsible for implementing the terms and conditions set forth herein on behalf of PLD pursuant to a Compliance Plan.

3

b. PLD's Compliance Officer shall provide the FCC with a "Compliance Report" on April 30, 2018, July 30, 2018, October 30, 2018 January 30, 2019, April 30, 2019, July 26, 2019, October 30, 2019, January 30, 2020 and March 30, 2020 containing the following for the three-month period prior to that date:

    i. the identity of all consumer complaints provided to PLD served by any state regulatory and/or law enforcement agency and granted against PLD for unauthorized carrier changes;

    ii. the identity of all the consumer complaints served by the FCC, along with the FCC complaint identification number and the date of service;

    iii. the identity of any FCC slamming complaints related to allegations of deception by a telemarketer; and

    iv. any changes to PLD's business that could impact the terms and/or conditions set forth herein; and

8. <u>Telemarketing Services:</u> On or before March 28, 2018, PLD shall provide the FCC with the name, address, contact person, phone number and email addresses for each telemarketing company currently providing telemarketing services for PLD's telecommunication services.

    a. <u>Telemarketing Contracts:</u> On or before April 28, 2018, and for a period of two years from the effective date of this Agreement, PLD shall provide the FCC with unredacted copies of any and all active and available contracts for telemarketing services, and further agrees as follows:

        i. PLD shall notify the FCC within 30 days of any telemarketing contract after it is terminated and/or PLD enters into any additional contracts for telemarketing services for PLD's telecommunication services;

        ii. Subject to the provisions set forth herein, PLD will ensure that its contracts for telemarketing services include express provisions that prohibit a telemarketer from purposefully misrepresenting the relationship between a carrier and PLD, and provide for removal of any telemarketer from the PLD program in the event of

such purposeful misrepresentation is investigated and conclusively determined by the Compliance Officer; and

        iii. PLD shall require each of the contracted telemarketing vendors to obtain countersigned anti-slamming policies by individuals engaged in telemarketing PLD telecommunications services offerings.

    b. <u>Telemarketing Calls:</u> PLD shall provide the FCC with copies of any scripts used by identified telemarketing companies in connection with PLD. During any telemarketing call with consumers made in connection with PLD, the telemarketing sales representative must:

        i. state that s/he is PLD's representative;

        ii. identify that the telemarketing call's purpose is to inquire whether the consumer is authorized to and desires to change his or her local, long distance, international, or other toll service from his or her current preferred carrier to PLD;

        iii. not state that the consumer's carrier change is mandatory and/or required under any law or agreement made by the consumer's carrier at the time of the call and/or necessary because the consumer's carrier at the time of the call is no longer offering services in the consumer's geographical area;

        iv. not make any false and/or misleading statements to the consumer regarding the third party verification ("TPV") service provider and/or its role, or instruct the consumer how s/he should respond to any questions made during the TPV call or callback or the PLD quality control call;

        v. immediately end the telemarketing call once the consumer states that (s)he is not interested in the PLD offer; and

        vi. use best efforts to explain the business relationship between PLD and the carrier, including where appropriate, PLD's affiliation with the AT&T Partner Exchange Program as a Platinum Service provider authorized to provide services powered by AT&T for wireless or wireline products and services and/or for the

consumer's local, long distance, international, or other toll carrier voice services at the time of the telemarketing call.

      c. <u>Telemarketing Monitoring</u>: PLD's Quality Control staff will continue to contact every subscriber prior to effectuating a carrier change.  The Quality Control staff member will inform the Compliance Officer if s/he determines there is merit to review a the telemarketer's representations to consumers.  If the Compliance Officer determines that the telemarketing representative intentionally misled the consumer, then the Compliance Office shall inform the call center of the situation.  The call center shall investigate and determine if reasonable facts exist to either engage with the independent telemarketer a discussion of the incident, retrain, monitor, suspend or remove from the PLD project.

  9.  <u>Third-Party Verification:</u>  PLD shall provide the FCC with copies of any scripts currently used by the TPV service providers that provide services in connection with PLD products and services along with a TPV regulatory checklist that identifies how PLD believes the script questions comply with the applicable TPV regulations.  Any changes to the TPV script shall also be provided to the FCC during the term of this Agreement.  The FCC will review PLD's TPV script and make suggestions about it within 30 days of receiving it.

  10.<u>PLD Quality Control Call:</u>  PLD shall conduct a Quality Control ("QC") call to every consumer that successfully completes the TPV process for  PLD products and/or services prior to switching the consumer's preferred carrier in order to confirm that the consumer understands (a) that PLD is a separate, competing carrier with the consumer's carrier at the time of the telemarketing call, and (b) other terms of the agreement being made to switch the consumer's preferred carrier to PLD.  The QC call should be attempted that same day unless exceptional circumstances prevent such a call.  PLD agrees it will not effectuate a carrier change unless it has successfully completed the QC call.  If the QC call indicates that a consumer does not wish to effectuate a carrier change for any reason, then PLD will not switch the consumer's preferred carrier. PLD shall

generate and maintain a QC call checklist for each consumer reflecting that his or her responses to each one of the questions comments made in the QC call.[1]

---

[1] The questions asked during the QC call will be provided to the FCC and will generally include the following questions:
    (a) Your phones and features will work the exact same way because PLD (leases the lines you are using now from your current carrier. Does that make sense?
    (b) What that also means is PLD is not part of or a corporate affiliate of your current carrier and has not been hired or contracted by your current carrier. PLD is a separate competitor in your area. Does that make sense?
    (c) PLD is not just a billing agent for your current carrier, PLD will handle all your customer service needs and issues. Your bills will come from PLD instead of your current carrier. Does that make sense?
    (d) Do you understand this is your choice to switch to PLD and is not a result of your carrier going out of business, losing too many customers, or due to any law or deregulation. We trust our service so much that we don't lock you into a contract. If you are unhappy for any reason you may choose another carrier at any time without penalty from PLD. We Just ask that before making any changes at least call us first and give us a chance to make you happy.
    (e) Is anything I just said or said during verification different than what the sales agent discussed with you?
    (f) Is anything I just said or said during verification different than what the sales agent discussed with you?
    (g) Lastly, for your protection against fraud, we block the lines for international dialing. Do you need to make any international calls? (If so, the country and quoted price will be notated on the QC checklist.)

11. <u>Consumer Complaint Handling Procedure:</u> Beginning on or before March 28, 2018 and continuing until March 28, 2020, the Compliance Officer shall handle all consumer complaints made to the FCC as follows:

    a. Within 10 business days, or as soon as practicable in the event of extraordinary circumstances, of being notified by the FCC of a consumer complaint made to the FCC, the Compliance Officer shall:

        i. attempt to contact the consumer in order to engage in good faith discussions the resolve the complaint to the consumer's satisfaction, including where appropriate, offering a credit or, if payment has been made, a refund of charges when appropriate made up to 90 days prior to the complaint being lodged when appropriate;

        ii. in cases of slamming based on unauthorized carrier changes then PLD shall offer the consumer an opportunity to review the relevant recordings of the third party verification ("TPV") call and/or PLD's QC Checklist in order to allow the customer to revise the allegations of their complaint; and

        iii. when relevant PLD will offer the consumer directions on how to switch to another preferred carrier instead of PLD if s/he desires to do so.

    b. Within 30 days of receiving notice of a slamming consumer complaint to the FCC, the FCC Compliance Officer shall provide the FCC with a written response to the consumer complaint that includes the following applicable to that complaint:

        i. the audio and transcript of the TPV;

        ii. information as to how PLD's TPV regulatory checklist was or was not satisfied during the consumer's TPV call;

        iii. PLD's QC checklist;

        iv. information about whether any credit and/or refund provided to the consumer including the amount and the basis for denial, if any;

        v. the identity of the telemarketing company that contacted the consumer;

    vi. a summary of the PLD Compliance Officer's communication and/or interaction with the consumer;

    vii. an indication if the consumer was satisfied with the results of any discussions with the Compliance Officer; and

    viii. In any instance where a slamming complaint filed with the FCC is based in whole or in part on the allegations that a telemarketer intentionally misled the consumer, in addition to providing materials required by the FCC's rules, PLD shall also provide to the FCC the name of the telemarketing organization, and the unique identifier of the specific telemarketer that made the call to the consumer resulting in the complaint.

  c. The FCC shall review any consumer complaints to the FCC against PLD, and PLD's responses in accordance with the applicable rules and regulations, including without limitation, 47 C.F.R. § 64.1150, and determine whether any unauthorized change in services or other violation has occurred using such proof and any evidence provided by the consumer and/or PLD. Nothing in the proposed Consent Judgment shall affect PLD's rights to file an Application for Review or Petition for Reconsideration of a FCC decision, as applicable.

12. <u>Judgment:</u> Judgment shall enter against PLD in the amount of $300,000, payment of which constitutes full and final settlement of the claims set forth in this action.[2]

13. <u>Payment:</u> Beginning on March 1, 2018, PLD shall make monthly installment payments at a rate of no less $12,500. PLD shall make payments on the first day of every month at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Defendant by the Financial Litigation Section of the USAO-CDCA.

---

[2] This amount shall be substituted for any forfeiture penalty amount imposed by any previously entered FCC forfeiture order, and such substitution should be reflected in the FCC's fee filer system.

1    a. <u>Default:</u> A payment is considered delinquent if it is more than fifteen (15) days late.  In the event that the monthly payments are delinquent on three or more months in any consecutive, twelve-month period, the United States may, in its sole discretion and without the obligation to seek authorization from the Court, initiate enforcement action(s) to collect payments on this judgment.  PLD waives any judicial challenge to the United States' decision to act under this Default Provision except for the right to make a judicial challenge based solely upon evidence that PLD was not delinquent on three or more months in any consecutive twelve-month period.  PLD will provide written notice, with documentary evidence and a declaration, evidencing the fact that PLD was not delinquent on three or more months in any consecutive twelve-month period to the United States at least five (5) court days prior to filing any judicial challenge.

   b. <u>Prepayment:</u>  PLD will not be subject to any prepayment penalties, and retains the ability at any time after entry of this Consent Judgment to pay the outstanding obligation in full.

   c. <u>Bankruptcy:</u> If PLD commences any case, proceeding, or other action under any law relating to bankruptcy or for relief from debts, PLD will not argue, contend or otherwise take the position that PLD's obligations under the Consent Judgment may or should be avoided.  Additionally, PLD will not challenge in such proceeding, the United States' right to file a proof of claim setting forth the balance due and owing at the time of the filing of such case, proceeding or other action, inclusive of any post-judgment accruals of interest, fees and penalties.

 14. This Consent Judgment will resolve the claims set forth in this action in their entirety with prejudice, including any PLD petitions for review pending before the FCC, as well as any claims relating to consumer complaints made to the FCC on or before the date that judgment is entered, and each party bears its own fees, costs, and expenses.

///

///

///

15. The parties agree that the district court will retain jurisdiction over this matter until April 1, 2020 for purposes of addressing any claims arising from the proposed Consent Judgment.

IT IS SO ORDERED.

DATED: March 7, 2018.   _____
                         UNITED STATES DISTRICT JUDGE